FILED
United States Court of Appeals
Tenth Circuit

November 9, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ALFREDO YERO PORRO,

      Plaintiff - Appellant,

v.

STANLEY BARNES; and MICHAEL
BRYANT, in his official capacity as
Sheriff of Jefferson County,

      Defendants - Appellees.

No. 10-6002

---

Appeal from the United States District Court
for the Western District of Oklahoma
(D.C. No. 08-CV-00970-C)

---

Submitted on the briefs:[*]

Mark E. Bialick and David B. Donchin, Durbin, Larimore & Bialick, Oklahoma
City, OK; and David W. Little, Law Offices of David Little, Oklahoma City, OK
for Plaintiff-Appellant.

Robert S. Lafferrandre and Randall J. Wood, Pierce Couch Hendrickson
Baysinger & Green, L.L.P., Oklahoma City, OK; and Chris J. Collins, Timothy
M. Melton, and Linda K. Soper, Collins, Zorn & Wagner, P.C., Oklahoma City,
OK for Defendants-Appellees.

---

    [*]  After examining the briefs and appellate record, this panel has
determined unanimously to grant the parties' request for a decision on the briefs
without oral argument. *See* Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument.

Before **KELLY** and **GORSUCH,** Circuit Judges, and **MELGREN**, District Judge.[**]

**GORSUCH**, Circuit Judge.

This case presents two central questions: What provision of the Constitution should this court use to analyze a federal immigration detainee's claim of excessive force? And does a county's failure to adopt a prophylactic policy with a standard of care higher than what the Constitution requires suffice, by itself, to suggest deliberate indifference to the Constitution's protections against excessive force? On the first question, we hold that the due process guarantee is the proper doctrinal prism through which to analyze the claims of federal immigration detainees who don't challenge the lawfulness of their detention but only the force used during that detention. On the second, we hold that the answer is simply no. To create a triable question of fact on the use of excessive force, a plaintiff must do more than show that the defendant county failed to adopt the most protective possible policy against the application of force. Because our conclusions mirror those reached by the district court on summary judgment, we affirm.

_____

[**] The Honorable Eric F. Melgren, United States District Court Judge for the District of Kansas, sitting by designation.

This case began when members of a certified emergency response team ("CERT") at the Jefferson County Jail in Oklahoma responded to a call that Alfredo Yero Porro, a federal immigration detainee, was acting in a disruptive manner in his cell, destroying parts of it. To address the situation, CERT members removed Mr. Porro from his cell, walked him to the jail's booking area, and placed him in a restraint chair. No one challenges the propriety of any of this. But then, after Mr. Porro was restrained, a member of the CERT proceeded to taser Mr. Porro at least three times. And it is this force that eventually gave rise to this lawsuit. Mr. Porro filed his claim under 42 U.S.C. § 1983, against three defendants: Kenny Lovett, the CERT member who tasered him; Stanley Barnes, the sheriff of Jefferson County at the time of the incident; and Michael Bryant, Mr. Barnes's successor. Against all three, Mr. Porro alleged that they violated the Constitution's prohibitions against the use of excessive force. Mr. Porro appeared to sue Messrs. Lovett and Barnes in their individual capacities, and Messrs. Barnes and Bryant in their official capacities.

At summary judgment, the district court entered a pair of rulings. First, it entered judgment for Mr. Porro against Mr. Lovett and awarded damages of $100,000. The court found, among other things, that Mr. Lovett violated county rules prohibiting the use of a taser against a restrained detainee who presented no threat of harm, and that the force Mr. Lovett applied was constitutionally

excessive. Second, the district court granted summary judgment to Messrs. Barnes and Bryant. The court held that Mr. Porro had come forward with no more than "supposition, conjecture and innuendo" to suggest Mr. Barnes's personal involvement or the county's culpability. Aplt. App. at 467. The court added that all the evidence adduced before it suggested that Mr. Lovett's tasering was no "more than a random act or isolated event which occurred outside of the policies and procedures implemented by Defendant Barnes." Aplt. App. at 471.

Only the district court's latter judgment — in favor of Messrs. Barnes and Bryant — is contested on appeal. While not entirely clear from the briefing before us, Mr. Porro appears to suggest that the court erred in two distinct ways. First, he seems to say, a triable question of fact exists on whether Mr. Barnes should be held liable in his individual capacity for his alleged personal role in the tasering incident. Second, Mr. Porro appears to suggest, a triable question exists on whether both Messrs. Barnes and Bryant should be held liable in their official capacities because the policy of the County's Sheriff's Office was the moving force behind his injury.

We address these two arguments in turn. Because this case comes to us on summary judgment, we of course review it *de novo* and may affirm only if the facts, viewed in the light most favorable to Mr. Porro, warrant that result as a matter of law.

## II

To assess Mr. Porro's first argument — that Mr. Barnes is liable in his individual capacity for unconstitutional use of excessive force — we must begin by asking *which* constitutional standard controls before asking *whether* the evidence presented creates a triable question of fact under that standard.

## A

Our first task in any § 1983 suit alleging a constitutional violation is "to isolate the precise constitutional violation with which [the defendant] is charged." *Baker v. McCollan*, 443 U.S. 137, 140 (1979). On this score, Mr. Porro doesn't offer much help: he alleges simply a violation of the "Fourth, Eighth, and Fourteenth" Amendments, without suggesting which one he thinks best applies to his case or offering any further explanation. *See* Amd. Compl. ¶ 3.

The choice of amendment matters. Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment — all depending on where the defendant finds himself in the criminal justice system — and each carries with it a very different legal test. So, because the Fourth Amendment protects against "*unreasonable* searches and seizures" and pertains to the events leading up to and including an arrest of a citizen previously at liberty, excessive force claims arising during this period are generally reviewed under a relatively exacting "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir.

1991) (holding that the Fourth Amendment applies until formal charges are brought or an arraignment is held because force used is part of the "seizure"), *abrogated on other grounds, Johnson v. Jones*, 515 U.S. 304 (1995).

Meanwhile, prisoners already convicted of a crime who claim that their *punishments* involve excessive force must proceed under the more restrictive terms of the Eighth Amendment's "cruel and unusual punishments" clause. Here, we ask only whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson v. McMillan*, 503 U.S. 1, 6-7 (1992); *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).

And when neither the Fourth nor Eighth Amendment applies — when the plaintiff finds himself in the criminal justice system somewhere between the two stools of an initial seizure and post-conviction punishment — we turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities. *See County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). Take the example of an arraigned pretrial detainee who brings an excessive force claim. He doesn't dispute that he's been lawfully seized and committed to pretrial detention, and he isn't complaining about any punishment meted out as part of a post-conviction sentence. Instead, his complaint is about arbitrary governmental action, taken without due process, while he is detained awaiting trial. In these circumstances,

our precedent instructs us to focus on three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor." *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003). We've also said that "[f]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience may be redressed under the Fourteenth Amendment." *Id* (internal quotation and alterations omitted).

We hold that it is this last, due process, standard that controls excessive force claims brought by federal immigration detainees like Mr. Porro. Why he was being detained at the Jefferson County Jail — whether, for example, he had violated his parole or was awaiting deportation — Mr. Porro does not tell us. But neither does he dispute that he had been lawfully seized and detained. In this way, he is unlike the citizen who complains about the force used to effect his seizure in his initial encounter with the police, which would trigger the Fourth Amendment's protections. Mr. Porro also appears to be unlike the convicted prisoner who may be lawfully subjected to punishment as part of his sentence, but who complains that his punishment involves excessive force and so must resort to the Eighth Amendment. No one alleges that Mr. Porro's detention came after any conviction. In these circumstances — circumstances in which many federal immigration detainees' claims of excessive force must surely arise — Mr. Porro appears to walk in much the same shoes as an arraigned pre-trial detainee. He is

therefore protected by the due process clause (in this case, the Fourteenth Amendment's due process clause, given that Mr. Porro's complaint is against state officials). We note that other courts confronting the status of immigration detainees before us have reached this same conclusion, assessing their excessive force claims under the due process rubric. *See*, *e.g.*, *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *Sidorov v. Sabol*, 2010 WL 500415, *2 n.2 (M.D. Pa. Feb. 4, 2010).

B

That much straightened out, we agree with the district court that Mr. Porro cannot make out an excessive force claim against Mr. Barnes. And this is because there's no evidence of his *direct personal responsibility* for the force used against Mr. Porro. In our due process precedent we have said that we examine the force used, the injury inflicted, and relevant motives. But in each instance, the focus must always be on the *defendant* — on the force *he* used or caused to be used, on the injury *he* inflicted or caused to be inflicted, and on *his* motives. This is because § 1983 isn't a strict liability offense. It renders liable only those persons "who, under color of any [state law] . . . subject[], or cause[] to be subjected, any citizen" to a deprivation of his or her lawful rights. 42 U.S.C. § 1983. From this statutory language, it is evident that "[i]n order for liability to arise under § 1983, a defendant's *direct personal responsibility* for the claimed deprivation of a constitutional right must be established." *Trujillo v.*

- 8 -

*Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) (emphasis added); *see also*

*Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007) (requiring that

the defendant have "personally participated" in the constitutional deprivation and

holding that mere presence at the scene was insufficient).

Viewed through this prism, Mr. Porro can satisfy none of the due process

factors against Mr. Barnes individually.[1]  True enough, Mr. Porro was subjected

to force, injured by it, and an improper motive was involved.  But all this came at

Mr. Lovett's hands and as a result of his motives.  When it comes to Mr. Barnes,

the undisputed facts show that Mr. Barnes did not employ any force on Mr. Porro

and was not present when the force was applied.  Neither does the record suggest

Mr. Barnes gave any advance approval to the use of a taser on Mr. Porro.  Though

Mr. Porro says that Mr. Barnes knew CERT members "planned" to taser him and

assented to it, this claim is, as the district court observed, based on innuendo and

speculation rather than fact.  The facts to which Mr. Porro himself stipulated

indicate that Mr. Barnes did not hear any prior discussions among members of the

---

[1]  How much one due process "factor" may "balance" against another is the subject of little discussion in our case law.  For example, while we've said that due process violations "required that the force be inspired by malice or by excessive zeal that shocks the conscience," *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.24 (10th Cir. 2007) (*en banc*) (citing *Hannula v. City of Lakewood*, 907 F.2d 129, 131-32 (10th Cir. 1990)), we have usually examined an officer's motive in combination with the preceding factors, conducting such an inquiry in *Hannula* itself, *see* 907 F.2d at 131-32.  Happily, we need not delve further into any of this today because Mr. Porro fails on *each* of the due process factors our precedent discusses.

CERT that a taser was going to be used, or might be used, on Mr. Porro. Aplt. Appx. at 15, 272. The record likewise lacks any evidence suggesting that Mr. Barnes caused any of Mr. Porro's injuries, or bore malice or exhibited excessive zeal toward him.

To all this, Mr. Porro seems to reply that Mr. Barnes should be held liable by virtue of the fact that he was Mr. Lovett's supervisor. But even assuming Mr. Barnes enjoyed supervisory authority over Mr. Lovett and the rest of the CERT — a question suggested by the parties' briefs but which we need not explore — that isn't enough to generate a triable question of liability.

Just as § 1983's plain language doesn't authorize strict liability, it doesn't authorize *respondeat superior* liability. The plain language of the statute, again, asks simply whether the defendant at issue *"subject[ed], or cause[d] to be subjected"* a plaintiff to a deprivation of his legal rights. 42 U.S.C. § 1983 (emphasis added). To establish a violation of § 1983 by a supervisor, as with everyone else, then, "the plaintiff must establish a deliberate, intentional act" on the part of the defendant "to violate [the plaintiff's legal] rights." *Serna v. Colo. Dep't. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (internal quotation marks omitted); *see also Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) ("[T]here is no concept of strict supervisor liability.") (internal quotation omitted); *Coleman v. Turpen*, 697 F.2d 1341, 1346 n.7 (10th Cir. 1982).

In the due process context, this means the focus is on the force the *supervisor* used or caused to be used, the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable, which can be no less than the *mens rea* required of anyone else. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (a plaintiff can "no longer succeed on a § 1983 claim . . . by showing that as a supervisor [the defendant] behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges") (internal quotation omitted). Simply put, there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else. And as we've already explained, Mr. Porro's claim against Mr. Barnes fails that test.

III

Even if Mr. Barnes isn't liable in his individual capacity, Mr. Porro argues that Mr. Barnes — and Mr. Bryant — are liable in their official capacities for violating his constitutional due process rights by failing to train CERT members adequately. Suing individual defendants in their official capacities under § 1983, we've recognized, is essentially another way of pleading an action against the county or municipality they represent. *See Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 690 n.55 (1978); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Because of this, we apply the standard of liability to

- 11 -

municipalities and counties in assessing whether Mr. Porro's official capacity claim for failure to train survives summary judgment. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985); *see also Dodds*, 614 F.3d at 1202 (noting that although *Iqbal* clarified the standards for assessing supervisory liability, "[n]othing in *Iqbal* contradicts" the standards for municipal liability under § 1983).

To prevail under this standard, Mr. Porro must demonstrate, among other things, that "the need for more or different training [was] so obvious, and the inadequacy so likely to result in the violation of [his due process] rights, that the policymakers of the [county] can reasonably be said to have been deliberately indifferent to the need for additional training." *Jenkins*, 81 F.3d at 994 (internal quotation omitted). It isn't enough to "show that there were general deficiencies in the county's training program for jailers." *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999). Rather, a plaintiff must "identify a specific deficiency" that was obvious and "closely related" to his injury, *id.*, so that it might fairly be said that the official policy or custom was both deliberately indifferent to his constitutional rights and the moving force behind his injury, *see City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Mr. Porro cannot shoulder that burden in this case. The undisputed facts show that the county trained jailers to use tasers only if and when an inmate should become violent, combative, and pose a direct threat to the security of staff.

The record also shows that Mr. Lovett knew he was acting in defiance of this policy when he tasered Mr. Porro. *See* Aplt. App. at 16, 110. From this undisputed evidence, any reasonable fact finder would have to conclude that — far from exhibiting deliberate indifference to Mr. Porro's due process rights against the use of excessive force or causing his injury — the county actively sought to protect those rights and it was (only) Mr. Lovett's improper actions, taken in defiance of county policy, that caused Mr. Porro's injuries. *See id.* at 16, 110, 273.[2]

To this, Mr. Porro replies that the county exhibited deliberate indifference by failing to enforce a putative federal policy that completely bans the use of tasers on immigration detainees. In pursuing this line, Mr. Porro seems to assume that the putative federal policy and the Constitution are congruent, so that a failure to train on the former is incontrovertible evidence that the latter was offended. The failure to abide by the federal policy apparently amounts, in his view, to automatic or *per se* proof of deliberate indifference. *Cf.* Restatement

---

[2] Mr. Porro's brief isn't clear whether he seeks to raise his failure-to-train argument against Mr. Barnes in his individual, as well as official, capacity. And, of course, arguments not clearly made in an opening brief are deemed waived. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998). But even if we were to assume Mr. Porro raised this argument against Mr. Barnes in his individual capacity, it would fail for essentially these same reasons.

(Third) of Torts: Liability for Physical and Emotional Harm § 14 (2010)

(discussing statutory violations as negligence *per se*).[3]

The problem is that Mr. Porro never seeks to explain how or why the violation of the federal *policy* (assuming it existed and controlled in a county jail) necessarily demonstrates deliberate indifference to his *constitutional* due process rights. It is his burden to establish that the Constitution, not just a policy, is implicated. Yet he overlooks this necessity altogether. *Cf. Jolivet v. Cook*, 1995 WL 94496, *2 (10th Cir. 1995) (unpublished) ("Plaintiff notes that defendants admitted they violated prison policy on use of taser weapons. However, violation of a prison regulation does not give rise to an Eighth Amendment violation absent evidence the prison official's conduct failed to conform to the constitutional standard.").

No doubt Mr. Porro hasn't sought to carry this burden because he can't. Policies are often prophylactic, setting standards of care higher than what the Constitution requires. And that's surely the case here. While the putative federal policy may totally forbid the use of tasers on immigration detainees, the Constitution doesn't go so far. The use of tasers in at least *some* circumstances — such as in a good faith effort to stop a detainee who is attempting to inflict harm on others — can comport with due process. *Cf. Hinton v. City of Elwood*,

---

[3] Neither does Mr. Porro bring his § 1983 suit alleging violation of any *other* federal legal entitlement. His suit alleges only the violation of his *constitutional* rights. *See* Aplt's Br. at 1; Amd. Compl. ¶ 3.

997 F.2d 774, 777 (10th Cir. 1993) (holding, in the Fourth Amendment context, that it is not excessive force for officers to use an "electrical stun gun" on a man resisting arrest); *Hunter v. Young*, 238 F. App'x 336, 339 (10th Cir. 2007) (unpublished) (use of taser is not per se unconstitutional when used to compel obedience by inmates); *Draper v. Reynolds*, 369 F.3d 1270, 1278 (11th Cir. 2004); *Jasper v. Thalacker*, 999 F.2d 353, 354 (8th Cir. 1993); *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992); *Michenfelder v. Sumner*, 860 F.2d 328, 335-36 (9th Cir. 1988).

Simply put, the failure to enforce a prophylactic policy imposing a standard of care well in excess of what due process requires cannot be — and we hold is not — enough by itself to create a triable question over whether county officials were deliberately indifferent to the Constitution. This isn't to say, of course, a county's failure to train its employees in a prophylactic policy is always or categorically irrelevant to the question of deliberate indifference. We need and do reject only Mr. Porro's claim that such a failure *alone* suffices to make out a claim of deliberate indifference.

\* \* \*

Mr. Porro won a significant judgment against Mr. Lovett, the individual who tasered him. With this result, no party to this appeal has any quarrel. We hold only, as did the district court, that Mr. Porro has failed to adduce evidence

suggesting that Messrs. Barnes or Bryant also bear legal responsibility for the violation of his constitutional rights.  The judgment of the district court is

*Affirmed.*