Kristine J. KELLUM, Plaintiff,

v.

BERNALILLO COUNTY, The Bernalillo County Commission, Correctional Healthcare Companies, Inc., Timothy Trapp, Kaaki Garner, Stephanie Breen, Taileigh Sanchez, and Adela Mares, Defendants.

No. CIV 14–00163 RB/CG

United States District Court,
D. New Mexico.

Signed 01/27/2017

Charles N. Lakins, Lakins Law Firm, P.C., Albuquerque, NM, for Plaintiff.

April D. White, Yenson, Allen & Wosick, P.C., Albuquerque, NM, Patrick D Allen, Yenson, Allen & Wosick, P.C., Albuquerque, NM, Alfred A. Park, Kevin D. Fowler, Lawrence M. Marcus, Albuquerque, NM, for Defendants.

## MEMORANDUM OPINION AND ORDER

ROBERT C. BRACK, UNITED STATES DISTRICT JUDGE

This matter is before the Court on Defendants Timothy Trapp, Kaaki Garner, Stephanie Breen, Taileigh Sanchez and

Correctional Healthcare Companies' Fed. R. Civ. P. 56 Motion for Summary Judgment Seeking Dismissal of Federal Claims Against it for Damages Based upon Eighth Amendment Violations, filed on December 7, 2016. (Doc. 242.) Jurisdiction arises under 28 U.S.C. §§ 1331 and 1367. Having considered the submissions of counsel and relevant law, the Court will **DENY** Defendants' motion.

## I. Factual and Procedural Background[1]

Ms. Kristine Kellum (Plaintiff) pleaded guilty to certain drug trafficking charges on October 1, 2010. (Docs. 242–1 at 3; 242 ¶¶ 1, 4; 247 ¶¶ 1, 4.) Judge Sheppard with the Second Judicial District Court entered a judgment, imposing a sentence that included 9 years (suspended), 5 years supervised probation, 60 days pre-sentence credit, and 2 years parole. (Docs. 242–1 at 3; 242 ¶ 4; 247 ¶¶ 4, A; 251 ¶ A.)

Plaintiff violated her probation on April 10, 2012. (Docs. 242–1 at 3; 247–13 ¶ 3; 242 ¶ 5; 247 ¶¶ 5, B; 251 ¶ B.) The district court issued a warrant, Plaintiff was arrested, and the district court conducted a probation violation hearing on May 31, 2012. (Docs. 242–1 at 2–3; 247–13 ¶ 3; 242 ¶ 5; 247 ¶ 5.) The district court revoked Plaintiff's probation and reinstated her probation on new terms. (Docs. 242–1 at 2; 247–13 ¶ 5; 242 ¶ 5; 247 ¶ 5.) Plaintiff's new probation terms, recorded in an Order Setting Conditions of Release, did not include a requirement to participate in a Drug Court program. (Docs. 247–2; 247–13 ¶ 5; 247 ¶¶ C–D; 251 ¶¶ C–D.)

Plaintiff violated her probation again on June 15, 2012, when she was arrested for driving while intoxicated and speeding. (Docs. 242–1 at 2; 247–13 ¶ 6; 242 ¶ 6; 247

---

1. In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to the Plaintiff. Fed. R. Civ. P. 56; *see also Garrison v. Gam-* *bro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court recites only that portion of the factual and procedural history relevant to this motion.

¶¶ 6, E; 251 ¶ E.) At the resulting July 17, 2012 probation violation hearing, the district court reinstated her probation with a new condition: Plaintiff was to attend Drug Court. (Docs. 242–1 at 2; 247–3. 247–4; 247–5; 247–13 ¶ 8; 242 ¶ 6; 247 ¶¶ 6, E–G; 251 ¶¶ E–G.) The district court's 1st Amended Order of Probation imposed a "special condition," which required Plaintiff to "successfully complete the Drug Court Program." (Docs. 247–7 at 2; 247 ¶ H; 251 ¶ H.) Under the terms of the 1st Amended Order of Probation, Plaintiff agreed that her "Probation Officer ha[d] the authority to have [her] arrested without a warrant" if she "violate[d] any one of the conditions of this Order during the time of [her] probation." (Docs. 247–7 at 3; 247 ¶ H; 251 ¶ H.)

Plaintiff asserts that when she enrolled in the Drug Court Program, she signed an agreement which provided for certain automatic sanctions.[2] (Doc. 247–13 ¶ 11; see also Docs. 247–12 ¶¶ 8, 10–11; 247 ¶ Q; 251 ¶ Q[3].) On September 26, 2012, an "Order on Drug Court Violation" and "Drug Court Remand Order" were entered, and Plaintiff served three days at the Metropolitan Detention Center (MDC) for a "violation of [the] conditions of [her] release." (Docs. 242–1; 247–9; see also Docs. 247–13 ¶ 13; 247 ¶ I; 251 ¶ I.) There is no evidence that the court held or required a probation violation hearing for this sanction, and Plaintiff asserts that "it was an automatic sanction according to the Drug Court Agreement." (Doc. 247–13 ¶ 13; see also Docs. 247–8; 247–9; 247 ¶ J; 251 ¶ J.)

Early in October 2012, Plaintiff failed to report to her probation officer, call in daily to report her status, or submit to urinalysis as required. (Docs. 247–13 ¶ 14; 247 ¶ K; 251 ¶ K.) Consequently, the district court entered an "Order on Drug Court Violation" and "Drug Court Remand Order" on October 17, 2012, remanding Plaintiff to "the custody of the [MDC] . . . until completion of" the Addiction Treatment Program (ATP). (Docs. 247–10; 247–11; see also Docs. 242 ¶ 8; 247 ¶¶ 8, L; 251 ¶ L.) The ATP is a four-week program based at the MDC that uses therapy, education, "relapse prevention planning," and "living skills groups" to help individuals "who have been identified as having addiction treatment needs . . . ." Addiction Treatment Program, available at http://www.bernco.gov/addiction-and-treatment-services/addiction-treatment-program.aspx (last accessed Jan. 26, 2017). On October 17, 2012, Plaintiff's probation officer arrested Plaintiff, transported her to the MDC, and remanded her into the MDC's custody. (Docs. 247–13 ¶ 16; 242 ¶ 7; 247 ¶¶ 7, M; 251 ¶ M.) Again, there is no evidence that the court held or required a probation violation hearing for this sanction.

Plaintiff asserts that the arrest and remand to the MDC was in accordance with the 1st Amended Order of Probation and the terms of the agreement she had signed. (Docs. 247–7; 247–13 ¶ 17; 242 ¶ 8; 247 ¶¶ 8, T; 251 ¶ T.) Plaintiff submitted an affidavit from Ms. Catherine Hartman,

**2.** Plaintiff asserts that she attempted to get a copy of the agreement from the Drug Court, but she could not obtain a copy because her case was closed and her file had likely been destroyed. (See Docs. 247–12 ¶ 9; 247–13 ¶ 12.)

**3.** Defendants repeatedly state that they do not dispute certain facts Plaintiff includes in her responsive brief. Instead, Defendants contend

that "the fact remains that no due process hearing was conducted by which Plaintiff Kellum was found to have violated her parole and/or drug court release conditions[,]" and they also "dispute whether a due process hearing is required in order to change an individual's status from that of pretrial detainee to adjudicated prisoner." (See Doc. 251 ¶¶ J, M, O–S, U–V.)

the Supervisor of the Second Judicial District Drug Court, who stated that "[p]articipants in the Drug Court program do not have to go before a Judge for [a] hearing in order for sanctions, such as remand to MDC, to be imposed for violation of Drug Court program rules." (Docs. 247–12 ¶ 13; 247 ¶ P; 251 ¶ P.)

## II. Summary Judgment Standard of Review

Summary judgment is appropriate when the Court, viewing the record in the light most favorable to the nonmoving party, determines "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). A fact is "material" if it could influence the determination of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over a material fact is "genuine" if a reasonable trier of fact could return a verdict for either party. *Id.* The moving party bears the initial responsibility of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the moving party meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(e)) (quotation marks omitted). The party opposing a motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (citing *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548). Rule 56(c) provides that "[a] party asserting that a fact ... is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials ...." Fed. R. Civ. P. 56(c)(1)(A). The respondent may not simply "rest on mere allegations or denials of [her] pleadings." *Anderson*, 477 U.S. at 259, 106 S.Ct. 2505; *see also Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980) ("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.") (quotation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Colony Nat'l Ins. Co. v. Omer*, No. 07-2123-JAR, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008) (citing Fed. R. Civ. P. 56(e); *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)). "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted).

## III. Analysis

### A. The Definitions of a Pretrial Detainee vs. an Incarcerated Person

The issue before the Court is whether Plaintiff's status at the time of the events

described in her Complaint was closer to that of a pretrial detainee or an incarcerated person.[4] "Pretrial detainees are protected under the Due Process Clause" of the Fourteenth Amendment, while incarcerated persons are protected under the Eighth Amendment. *Glover v. Gartman*, 899 F.Supp.2d 1115, 1133 (D.N.M. 2012) (quoting *Lopez v. LeMaster*, 172 F.3d 756, 759 n.2 (10th Cir. 1999) (internal citation omitted)). Ultimately, the Court finds that Plaintiff was closer to the definition of an incarcerated person for purposes of the Court's analysis of her claims.

■ "The classification of a plaintiff as ... a pretrial detainee" or an inmate "can have an impact on how a court analyzes the plaintiff's constitutional claims." *Gmyr–Maez v. Schneider*, 169 F.Supp.3d 1172, 1182 (D.N.M. 2016). In excessive force claims, for example, the distinction between an arrestee,[5] a pretrial detainee, and an inmate is crucial. *See id.* at 1183. "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment ... and each carries with it a very different legal test." *Id.* (quoting *Estate of Booker v. Gomez*, 745 F.3d 405, 418–19 (10th Cir. 2014) (internal quotation omitted)). "The choice of amendment depends on 'where the plaintiff finds herself in the criminal justice system.'" *Id.* (quoting *Estate of Booker*, 745 F.3d at 419 (brackets and internal quotation omitted)).

In contrast, the classification is largely a technical exercise in Plaintiff's case.[6] In determining whether Plaintiff's rights were violated, the Court will apply an identical analysis, regardless of whether she is more properly considered to have been a pretrial detainee or an inmate. *See Glover*, 899 F.Supp.2d at 1133 (quoting *Lopez*, 172 F.3d at 759 n.2 (internal citation omitted)). The Tenth Circuit has held that "[u]nder the Fourteenth Amendment's Due Process Clause, pretrial detainees are entitled to the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Barrie v. Grand Cty., Utah*, 119 F.3d 862, 868 (10th Cir. 1997) (quotation omitted)). "The Supreme Court has made clear[, however,] that a plaintiff must plead the correct constitutional provision underlying the § 1983 claim to state a valid claim ...." *Chavez v. Bd. of Cty. Comm'rs of Sierra Cty.*, 899 F.Supp.2d 1163, 1185 (D.N.M. 2012).

■ The difference between pretrial detainees and incarcerated persons is largely a matter of the adjudication of guilt or innocence. A pretrial detainee "has had only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [her] liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); citing *Virginia*

---

4. The Court uses the terms "incarcerated person," "inmate," and "prisoner" interchangeably throughout the Opinion.

5. "An arrestee has not yet undergone a probable cause determination[,]" but may be in custody. *See Gmyr–Maez*, 169 F.Supp.3d at 1182 (citing *Wilson v. Montano*, 715 F.3d 847, 852–53 (10th Cir. 2013)).

6. Defendants argue that Plaintiff's claims should be dismissed if she brought them pursuant to the wrong amendment. (Doc. 242 at

15 (noting that "the 'precise' constitutional violation must be alleged in order to avail oneself of the 'powerful tool' that Section 1983 provides").) The Court notes, however, that even in the event the Court found Plaintiff should be classified as a pretrial detainee, it would be inclined to grant a motion to amend her complaint to change the constitutional provision under which she brought her claims. The parties would require no additional discovery, because the deliberate indifference standard is the same under either amendment.

*v. Paul*, 148 U.S. 107, 119, 13 S.Ct. 536, 37 L.Ed. 386 (1893)). An incarcerated person is one "whose guilt has been adjudicated" and is being punished by confinement. *Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1493 (10th Cir. 1990) (citing *Bell*, 441 U.S. at 534–35, 99 S.Ct. 1861).

In this case, Plaintiff had already pleaded guilty to drug trafficking charges, but her original nine year jail sentence was suspended. Instead, she was remanded to the custody of the MDC because she did not adhere to the terms of the 1st Amended Probation Order. "[C]ourts are divided over whether a detainee awaiting adjudication on a probation violation is a 'pretrial detainee' ... or a 'convicted prisoner' ...." *Richard v. Bd. of Cty. Comm'rs of Sedgwick Cty.*, No. 09-1278, 2014 WL 631289, at *32 (D. Kan. Feb. 18, 2014) (citing *Palmer v. Marion Cty.*, 327 F.3d 588, 592–93 (7th Cir. 2003) ("The confusion about the constitutional predicate for Palmer's claims arises from the uncertainty as to whether a detainee awaiting a hearing on a probation violation can be 'punished' under the Eighth Amendment.") (internal citation omitted)). Defendants rely on several cases where courts have classified persons in custody due to alleged probation violations as pretrial detainees. The cited cases are all distinguishable.

## B. The Purpose Behind the Distinction Between Pretrial Detainees and Inmates

Defendant cites first to *Montoya v. Newman*, 115 F.Supp.3d 1263 (D. Colo. 2015). (Doc. 242 at 10.) The plaintiff in *Montoya* "was placed in ... jail after his probation officer found [he] had tested positive for cocaine use." 115 F.Supp.3d at 1268. At some point, the plaintiff "agreed to complete an inpatient residential treatment program[,] ... [and w]ithout any intervening court proceedings, his probation officer requested that" the plaintiff be transferred from the jail to the treatment program on a date one week after he went into custody. *Id.* Two days into his weeklong stay at the jail, Mr. Montoya became ill. *Id.* He made multiple requests for medical attention over the next four days. *Id.* at 1268–69. On the day he was transported to the inpatient treatment program, a treatment program staff member sent him to the emergency room, where he was diagnosed with several serious conditions. *Id.* at 1270. Mr. Montoya brought suit against the sheriff and several jail employees, asserting claims under both the Eighth and Fourteenth Amendments, as well as a state law negligence claim. *Id.* at 1270–71.

The defendants argued they were entitled to immunity under the Colorado Governmental Immunity Act (CGIA) for Mr. Montoya's state law negligence claim. *Id.* at 1289–90. "Under the CGIA, an employee of a public entity is immune from all claims that lie in tort or could lie in tort, except ... immunity is waived in an action for injuries resulting from the operation of any correctional facility or jail by a public entity or employee." *Id.* at 1289 (citing C.R.S. § 24–10–106(1), (1)(b)). The waiver *does not* apply to claims from inmates, defined as "claimants who have been convicted of a crime and [are] incarcerated in a correctional facility or jail pursuant to such conviction." *Id.* (quoting C.R.S. § 24–10–106(1.5)(a)). The waiver *does* apply to claims from pretrial detainees, defined as "claimants who are incarcerated but not yet convicted of the crime for which such claimants are being incarcerated." *Id.* (quoting C.R.S. § 24–10–106(1.5)(b)). The court had to determine, therefore, whether Mr. Montoya should be classified as a convicted prisoner (thereby entitling the defendants to immunity under the CGIA) or a pretrial detainee (waiving immunity for defendants and making them potentially liable for his state law negligence claim). The situation here is distinguishable. The

Court is not deciding Plaintiff's status for the purpose of deciding whether Defendants are entitled to any kind of immunity, but to determine which amendment Plaintiff should have brought her claims under. Were the Court to find that Plaintiff was a pretrial detainee, Defendants would not then be entitled to immunity from liability, as the *Montoya* defendants had hoped to do by classifying Mr. Montoya as a convicted prisoner under the CGIA. *See id.*

The *Montoya* court stated the issue as "whether Mr. Montoya was incarcerated pursuant to his earlier conviction or was he incarcerated, but not yet convicted, of a probation violation." *Id.* at 1290. The court noted that Mr. Montoya had not previously been "sentenced to jail or prison on the underlying conviction[,]" and "[a]bsent the alleged probation violation, Mr. Montoya would not have been incarcerated." *Id.* This is also distinguishable from the present case, where Plaintiff was originally sentenced to nine years in jail, although the court suspended that entire term.

The *Montoya* court ultimately found that under the CGIA, the plaintiff should be seen as a claimant who was 'incarcerated but not yet convicted of the crime for which (he was) being incarcerated.' " *Id.* (quoting C.R.S. § 24–10–106(1.5)(b)). The court reasoned that such a result was "consistent with a broad construction of 'the CGIA provisions that waive immunity in the interest of compensating victims of governmental *negligence*.' " *Id.* (quoting *Springer v. City & Cty. of Denver*, 13 P.3d 794, 798 (Colo. 2000) (emphasis added) (internal citations omitted)). The interests under the CGIA do not mirror those underlying the distinction between pretrial detainees and incarcerated persons for purposes of the deliberate indifference standard used in claims brought under both the Eighth and Fourteenth Amendments. In analyzing either Eighth or Fourteenth Amendment claims using the delib-

erate indifference standard, the Court is not interested in compensating Plaintiff if she has been the victim of governmental negligence. " '[M]ere negligence' does not constitute deliberate indifference" under the standard the court will employ in this case. *Farmer v. Brennan*, 511 U.S. 825, 860, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (Thomas, J., concurring) (citations omitted). Plaintiff will only recover if she proves she has suffered a "deprivation[ ] involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 20, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (Thomas, J., dissenting)); *see also Mitchell v. Maynard*, 80 F.3d 1433, 1442 (10th Cir. 1996); *Berry*, 900 F.2d at 1496).

## 1. The purpose of Plaintiff's detainment was to punish, it was not prophylactic.

Courts distinguish between pretrial detainees and inmates because their rights are controlled by different constitutional amendments. "The rights of pretrial detainees ... are not controlled by the cruel and unusual punishment clause of the Eighth Amendment because the Fifth and Fourteenth Amendments prohibit punishment 'prior to an adjudication of guilt in accordance with due process of law.' " *Berry*, 900 F.2d at 1493 (quoting *Bell*, 441 U.S. at 535, 99 S.Ct. 1861) (footnote omitted); citing *Ingraham v. Wright*, 430 U.S. 651, 672 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment.")). "Punishment constrained by the Eighth Amendment can be imposed only when it 'follow[s] a determination of guilt after trial or plea ....' " *Id.* (quoting *Bell*, 441 U.S. at 536 n. 17, 99 S.Ct. 1861 (citations omitted); citing *Garcia v. Salt*

*Lake Cty.*, 768 F.2d 303, 307 (10th Cir. 1985)).

The Court finds the reasoning in *Berry* instructive. 900 F.2d 1489. There, Mr. Mark Berry had been convicted of a crime and was in custody while awaiting sentencing, *Id.* at 1491–92. Mr. "Berry was murdered by fellow prisoners[,]" and his wife brought claims under the Eighth and Fourteenth Amendments. *Id.* at 1492. "The district court submitted the case to the jury under" the Fourteenth Amendment (although not under the deliberate indifference standard), treating Mr. Berry like a pretrial detainee instead of an inmate. *Id.* In reversing, the Tenth Circuit noted that it "see[s] no reason to treat incarcerated persons whose guilt has been adjudicated formally but who await sentencing like pretrial detainees, who are detained primarily to ensure their presence at trial and who cannot be punished . . . ." *Id.* (citing *Bell*, 441 U.S. at 534–35, 99 S.Ct. 1861). Instead, the Tenth Circuit finds it more appropriate "to treat those awaiting sentencing the same as inmates already sentenced." *Id.* "The critical juncture is conviction, either after trial or . . . by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated." *Id.* (citing *Ingraham*, 430 U.S. at 664, 671 n.40, 97 S.Ct. 1401) (noting that the "Eighth Amendment 'was designed to protect those convicted of crimes' "). "For an inmate who has been convicted but not sentenced, the detention is primarily punitive, not solely prophylactic; therefore, prison brutality"— "murder by fellow prisoners" in Berry's case, or indifference to serious medical needs in Plaintiff's case— "is 'part of the total punishment to which the individual is being subjected for his [or her] crime and, as such, is a proper subject for Eighth Amendment scrutiny.' " *Id.* (quoting *Ingraham*, 430 U.S. at 669, 97 S.Ct. 1401 (internal quotation omitted)).

The question, then, is whether the ATP was prophylactic or part of the "total punishment to which [Plaintiff was] being subjected for [her] crime . . . ." *Ingraham*, 430 U.S. at 669, 97 S.Ct. 1401 (quotation omitted). It is true that Plaintiff was remanded to custody because she violated her probation, and not due to her original conviction. Defendants argue the key issue is that Plaintiff had not yet had a due process hearing to determine whether her continued restraint was lawful. Defendants ignore, however, that there is no evidence Plaintiff was awaiting or even entitled to a due process hearing. Instead, Plaintiff was remanded to the custody of the MDC as part of her total punishment—completion of the ATP was an automatic sanction for her probation violation. Consequently, the Court finds that Plaintiff should be classified as an inmate for purposes of its analysis of her claims.

The remaining cases Defendants cite to do not change the Court's conclusion. In *Kretek v. Board of Commissioners of Luna County*, No. CIV 11-0676 RB/GBW, 2013 WL 12039991 (D.N.M. Apr. 29, 2013), a man (Mr. Christopher Aparicio) was arrested and taken into custody for violating his probation by using methamphetamine. 2013 WL 12039991, at *1. During the intake process into the Luna County Detention Center, Mr. Aparicio became uncooperative and officers fatally injured him while attempting to restrain him. *Id.* at *1–4. In deciding how to analyze the resultant excessive force claim, the Court noted that "Mr. Aparicio was arrested and detained in a county detention center for an alleged probation violation and he had not been adjudicated to be in violation of his probation." *Id.* at *6 (citation omitted). "The Tenth Circuit has explained that when a plaintiff is detained before an adjudication of guilt 'neither the Fourth nor Eighth Amendment applies . . . [and] we turn to the due process clauses of the Fifth

or Fourteenth Amendment and their protection against arbitrary governmental action by federal or state authorities.' " *Id.* (quoting *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (internal citation omitted)). Consequently, the Court found that Mr. Aparicio was a pretrial detainee for purposes of the excessive force claim analysis. *Id.* There was no evidence, as there is here, that Mr. Aparicio was not awaiting or entitled to a probation violation hearing, nor that he had been remanded to custody until he had completed the ATP. *See id.* Consequently, *Kretek* is inapposite to the issue at hand.[7]

Defendants next cite to *State v. Segura*, 321 P.3d 140 (N.M. Ct. App. 2014). In *Segura*, the defendant had been "charged with one count of aggravated battery against a household member and one count of criminal damage to property." 321 P.3d at 142. After his arrest, he was released on bond. *Id.* "Seventeen months later, Defendant appeared at a scheduled plea hearing but decided to reject the State's plea offer." *Id.* After he rejected the offer, "the State orally alleged that Defendant had violated the conditions of his pretrial release by harassing the alleged victim"; there was also testimony from the alleged victim that the defendant was using drugs. *Id.* "The State asked the district court to remand Defendant into custody for these alleged violations." *Id.* The defendant's attorney raised due process concerns and asked for an evidentiary hearing, and the court refused. *Id.* Instead, the court ordered the defendant to submit to a urinalysis test and "found Defendant had violated his conditions of pretrial release" when the test came back positive. *Id.* at 143. The court did not allow an evidentiary hearing

and remanded the defendant to the custody of the MDC, ordering the defendant to participate in ATP during his detainment. *Id.* The court ruled that the defendant could return to court to "review the conditions of [his] pretrial release" after he completed ATP. *Id.* (internal quotation marks and brackets omitted). On appeal, the New Mexico Court of Appeals noted that the issue was "the technical process required to satisfy procedural due process before a district court may revoke bail and remand a pretrial defendant into custody." *Id.* at 146. The appellate court noted that the defendant was a pretrial detainee. *Id.* at 145. The Court of Appeals ultimately found that the defendant was entitled to "an adequate hearing prior to a pretrial revocation of his bail and remand into the custody of the local jail." *Id.* at 147. *Segura* is distinguishable, however, because of where the defendant was in the criminal justice system: he had not yet pleaded or been found guilty of the charged crimes. *Id.* at 142. Plaintiff here had not only already pleaded guilty to drug trafficking charges, but she had also signed an agreement regarding automatic sanctions for violations of her probation.

Finally, Defendants cite in their reply brief to *State v. Shambley*, 281 Neb. 317, 795 N.W.2d 884 (2011). (Doc. 251 at 7.) The defendant in *Shambley* pleaded guilty to possession of a controlled substance and, in lieu of sentencing, agreed to participate in a drug court program similar to the one at issue here. 795 N.W.2d at 888. After multiple violations of the terms of the contract she had signed, the court held a hearing where the defendant had the "burden to go forward with showing why she should not be terminated from the

---

7. Defendants' reference to *Voyles v. Dobbs*, No. 1:07CV42 LMB, 2008 WL 2783228 (July 15, 2008), is distinguishable on the same grounds as *Kretek*. (*See* Doc. 242 at 11.) In *Voyles*, the court noted that when the "alleged

constitutional violation occurred, plaintiff was incarcerated at the [jail] awaiting hearing on a probation violation." 2008 WL 2783228, at *2.

[drug court] program ....” *Id.* at 889. “The State did not argue any position[,] ... present any evidence[,] or call witnesses.” *Id.* “[T]he only evidence in support of termination” was a letter and five attachments sent from the drug court coordinator to the judge. *Id.* The coordinator recommended terminating the defendant from the drug court program. *Id.* The defendant argued she had not used illegal drugs on the latest date she had been accused of violating the contract terms. *Id.* at 890. The judge accepted the “recommendation to discharge [the defendant] from the program” and “sentenced [her] to 90 days’ incarceration with credit for 9 days served while awaiting sentence.” *Id.* The defendant appealed, arguing that the court did not afford her due process. *Id.* The Nebraska Supreme Court agreed that she was denied due process under the Fourteenth Amendment. *Id.* at 895–98. *Shambley* is distinguishable in that the defendant there was being terminated from the drug court program and given jail time, whereas Plaintiff here is being remanded to custody in order to complete a program designed to treat addictions.

## 2. The New Mexico Rules of Criminal Procedure authorize the Drug Court’s automatic sanctions.

■ Plaintiff points out that under New Mexico Rule of Criminal Procedure 5–805, “[a] judicial district may ... establish a program for sanctions for probationers who agree to automatic sanctions for a technical violation of the conditions of probation.” N.M. R. Ann. § 5–805(C). Under such a program, “a probationer may agree: (1) not to contest the alleged violation of probation; (2) to submit to sanctions in accordance with the local rule; and (3) to waive the provisions of Paragraphs D through L of this rule[,]” which include provisions relating to initial and adjudicatory hearings and discovery. N.M. R. Ann. § 5–805(C)(1)–(3), (G)–(I). Defendants do not argue that New Mexico Rule 5–805,

which authorizes the automatic sanctions at issue here, is unconstitutional. (Doc. 251 at 8.) Defendants simply maintain that “a person placed into custody prior to a due process hearing is not a ‘convicted’ person whose § 1983 rights are protected under the Eighth Amendment.” (*Id.*)

Defendants’ arguments fall short of demonstrating that Plaintiff should be classified as a pretrial detainee for purposes of the Court’s analysis of her claims. Taking the facts in a light most favorable to Plaintiff, the evidence shows that Plaintiff pleaded guilty and was sentenced to jail, but her sentence was suspended. She violated her probation on two separate occasions, receiving probation violation hearings on each occasion. After her second probation violation, the court entered the 1st Amended Order of Probation, which required Plaintiff to enroll in the Drug Court Program. As part of the program, Plaintiff signed an agreement that provided for automatic sanctions. Again, Plaintiff violated the 1st Amended Order of Probation on two separate occasions. After her first violation she served three days in jail, and there is no evidence that the court held or required a probation violation hearing. After her second violation, the court remanded her to the MDC to complete the ATP. There is no evidence the court held or required a probation violation hearing. New Mexico Rule of Criminal Procedure 5–805(C) authorizes such automatic sanctions when imposed by a special program such as the Drug Court. Under the facts alleged, completion of the ATP was part of the punishment to which Plaintiff was “being subjected for [her] crime and, as such, is a proper subject for Eighth Amendment scrutiny.” *See Berry,* 900 F.2d at 1493 (quotation omitted). Defendants’ motion will be denied.

**THEREFORE,**

**IT IS ORDERED** that Defendants Timothy Trapp, Kaaki Garner, Stephanie Breen, Taileigh Sanchez and Correctional Healthcare Companies' Fed. R. Civ. P. 56 Motion for Summary Judgment Seeking Dismissal of Federal Claims Against it for Damages Based upon Eighth Amendment Violations (Doc. 242) is **DENIED**.